UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In Re:                                          Chapter 11

Richard H. Kistela,                             Case No. 811-76378-A736

         Debtor.

-----------------------------------------------------------------X

## DEBTOR'S PLAN OF REORGANIZATION

         Richard H. Kistela, Debtor and Debtor-In-Possession ("Debtor" or "Kistela"),
proposes the following plan of reorganization ("Plan") pursuant to Chapter 11 of Title 11 of the
United States Code, 11 U.S.C. Section 1121(a) (the "Bankruptcy Code").

### ARTICLE I

### Definitions

         For purposes of this Plan, the following terms shall have the respective meanings as
hereinafter set forth (such meanings to be equally applicable to the singular and plural forms of the
terms defined, unless the context otherwise requires).  Capitalized terms used in this Plan shall at all
times refer to the terms as defined in this Article I.

1.01.        "Administrative Claim" means a claim for any cost or expense of administration of
             the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code
             including, without limitation, (i) any actual and necessary costs and expenses of
             preserving the Debtor's estate and of operating the Debtor's business; and (ii) all
             allowances of compensation for legal or other professional services or
             reimbursement of costs and expenses to the extent allowed by the Court under
             Sections 330, 331, 503 or 506(c) of the Bankruptcy Code or otherwise allowed by
             the Court.

1.02.        "Allowed Administrative Claim" means all or that portion of any Administrative
             Claim which is an Allowed Claim.

1.03.        "Allowed Claim" means a Claim or portion of a Claim (i) which is scheduled by the
             Debtor pursuant to Sections 521(1) of the Bankruptcy Code, other than a Claim
             which is scheduled by the Debtor as disputed, contingent or unliquidated; or (ii)
             proof of which has been filed pursuant to Section 501(a) of the Bankruptcy Code on
             or before the date designated by the Court as the last date for filing proofs of claim
             and with respect to which no objection to the allowance thereof has been interposed
             prior to the final date for filing such objections set forth in an order of the Court; or
             (iii) which, after objection thereto, has been allowed, in whole or in part, by a Final
             Order; or (iv) a Claim which has been granted pursuant to a Final Order.

1.04.        "Allowed Priority Claim" means all or that portion of an Allowed Claim entitled to
             priority under Section 507(a)(3), (4), (6), (7) or (8) of the Bankruptcy Code.

1.05.        "Allowed Secured Claim" means all or that portion of any Allowed Claim that is
             secured by a valid perfected lien on property of the Debtor to the extent of the value
             of the interest of the holder of such Allowed Secured Claim or by the Court by a
             Final Order pursuant to Section 506(a) of the Bankruptcy Code, together with such
             interest including, where applicable, accrued on or after September 7, 2011, fees,
             costs and charges as may be allowed by such agreement or by the Court under
             Section 506(b) of the Bankruptcy Code.  Allowed Secured Claims shall, inter alia,
             include Claims granted secured status pursuant to a specific order or orders of the
             Court.

1.06.        "Allowed Tax Claim" means all or that portion of an Allowed Claim entitled to
             priority under Section 507(a)(8) of the Bankruptcy Code.  Except as may be ordered

by the Court in the case of an Allowed Tax Claim, any interest accrued after September 7, 2011, on Allowed Tax Claims shall not be part of any Allowed Tax Claim.

1.07.    "Allowed Unsecured Claim" means any Allowed Claim that is not an Allowed Administrative Claim, an Allowed Lease Claim, an Allowed Priority Claim, an Allowed Secured Claim or an Allowed Tax Claim. Interest accrued after September 7, 2011 shall not be part of any Allowed Unsecured Claim.

1.08.    "Bankruptcy Code" means Title 11 of the United States Code, Bankruptcy Reform Act of 1978, (11 U.S.C. Sections 101, et. seq.) as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (P.L. No. 98-353) and the Bankruptcy Reform Act of 1994 and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

1.09.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure which govern procedure in cases under Title 11 of the United States Code, i.e., the Bankruptcy Code.

1.10.    "Business Day" means any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.11.    "Chapter 11" means Chapter 11 of the Bankruptcy Code.

1.12.    "Chapter 11 Case" means In re: Richard H. Kistela, Case 811-76378-A736 currently pending in the Court.

1.13.    "Claim" means a claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code; to wit, the (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) right

3

to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.14.    "Claimant" means the holder of a Claim.

1.15    "Class" means a class of holders of Allowed Claims described in Article II of the Plan.

1.16.    "Confirmation" means entry of an order by the Court approving the Plan in accordance with Chapter 11.

1.17    "Confirmation Date" means the date upon which the Court enters an order confirming the Plan in accordance with Chapter 11.

1.18    "Confirmation Order" means the order entered by the Court confirming the Plan in accordance with Chapter 11.

1.19    "Kistela" means Richard H. Kistela.

1.20.    "Court" means the United States Bankruptcy Court for the Eastern District of New York, or such other court as may have jurisdiction over the Debtor's Chapter 11 case.

1.21.    "Debtor" means Richard H. Kistela, who filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

1.22.    "Disallowed Claim" means any Claim or portion thereof that has been disallowed by the Court by a Final Order.

1.23.    "Disclosure Statement" means the document which is filed by the Debtor with the Court in connection with this Plan, and which is approved by a Final Order pursuant to Section 1125 of the Bankruptcy Code as containing adequate information to enable Claimants to make an informed decision in voting on the Plan.

1.24.    "Disputed Claim" means (i) any Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtor as disputed, contingent or unliquidated; or (ii) a Claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code as unliquidated or contingent; or (iii) a Claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code, by an order of the Court, or by this Plan, which objection has not been determined, in whole or in part, by a Final Order.

1.25.    "Effective Date" means the Business Day selected by the Debtor that is not less than ten (10) Business Days after the entry of the Confirmation Order.

1.26.    "Entity" is defined at Section 101(15) of the Bankruptcy Code.

1.27.    "Final Order" means an order or judgment of the Court as entered on the docket that (a) is not stayed, (b) has not been reversed, modified or amended, and (c) as to which the time to appeal, petition for certiorari, or seek reargument, review, reconsideration, rehearing or leave to appeal (excluding the time to move for relief from a final order or judgment under Rule 60(b) of the Federal Rules of Civil Procedure and the time to request revocation of an order of confirmation under Section 1144 of the Bankruptcy Code) has expired and as to which no appeal, petition for certiorari or other proceeding for reargument, review, reconsideration, rehearing or leave to appeal (including a motion for relief from a final order or judgment under said Rule 60(b) or a request for revocation of an order of confirmation under said Section 1144) or as to which any right to appeal, petition for certiorari or seek reargument, review, reconsideration, rehearing or leave to appeal has been waived in writing, or, if any appeal, petition for certiorari, or other

5

proceeding for reargument, review, reconsideration, rehearing or leave to appeal has been sought, the order or judgment of the Court has been affirmed by the highest court to which the order or judgment was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or seek further reargument, review, reconsideration, rehearing or leave to appeal (excluding the time to move for relief from a final order or judgment under said Rule 60(b) and the time to request revocation of an order of confirmation under said Section 1144) has expired.

1.28.    "First Anniversary Date" means the date which is one (1) year following the Effective Date, or the next Business Day.

1.29.    "Person" is defined at Section 101(41) of the Bankruptcy Code.

1.30.    "Plan" means this Plan of Reorganization, as modified or amended as and to the extent permitted herein or by the Bankruptcy Code.

1.31.    "Avoidance Actions" means causes of action against Persons relating to any payment, conveyance or other transfer of property of the Debtor to any Person that may be avoidable pursuant to Sections 544, 547, 548, 549 and 550 of the Bankruptcy Code.

1.32.    "Professional Person" is defined at Section 327(a) of the Bankruptcy Code.

1.33.    "Record Date" means the close of business on the Confirmation Date.

1.34.    "Reorganized Kistela" shall mean the Debtor on and after the Effective Date and shall include all of the assets of the Debtor.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

Classes

2.01.1    Class 1 shall consist of:

Allowed Secured Claim of Chase with respect to the real property known as 5 Harbor Hill Drive, Lloyd Harbor, New York ("5 Harbor Hill Property").

2.01.2    Class 2 shall consist of:

The Allowed Secured Claim of Bank of America with respect to the 5 Harbor Hill Property.

2.01.3    Class 3 shall consist of:

The Allowed Secured Claim of Bank of America with respect to the real property known as 29 Durham Avenue, Buffalo, New York ("29 Durham Property").

2.01.4    Class 4 shall consist of:

The Allowed Secured Claim of HSBC with respect to the real property known as 4 Oregon Place, Buffalo, New York ("4 Oregon Property").

2.01.5    Class 5 shall consist of:

The Allowed Secured Claim of Bank of America with respect to the real property known as 46 Gallatin Avenue, Buffalo, New York ("46 Gallatin Property").

2.01.6    Class 6 shall consist of:

The Allowed Secured Claim of Bank of America with respect to the real property known as 56 Gallatin Avenue, Buffalo, New York ("56 Gallatin Property").

2.01.7    Class 7 shall consist of:

The Allowed Secured Claim of Wells Fargo with respect to the real property known as 51 Beatrice Avenue, Buffalo, New York ("51 Beatrice Property").

7

2.01.8          Class 8 shall consist of:

The Allowed Secured Claim of HSBC with respect to the real property known as 500 Normal Avenue, Buffalo, New York ("500 Normal Property").

2.01.9          Class 9 shall consist of:

The Allowed Secured Claim of Bank of America with respect to the real property known as 157 Cable Street, Buffalo, New York ("157 Cable Property").

2.01.10         Class 10 shall consist of:

The Allowed Secured Claim of Bank of America with respect to the real property known as 14 Gallatin Avenue, Buffalo, New York ("14 Gallatin Property").

2.01.11         Class 11 shall consist of:

The Allowed Secured Claim of HSBC with respect to the real property known as 26 York Street, Buffalo, New York ("26 York Property").

2.01.12         Class 12 shall consist of:

The Allowed Secured Claim of HSBC with respect to the real property known as 42 Edison Street, Buffalo, New York ("42 Edison Property").

2.01.13         Class 13 shall consist of:

The Allowed Secured Claim of HSBC with respect to the real property known as 48 Congress Street, Buffalo, New York ("48 Congress Property").

2.01.14         Class 14 shall consist of:

The Allowed Secured Claim of HSBC with respect to the real property known as 84 Gallatin Avenue, Buffalo, New York ("84 Gallatin Property").

2.01.15         Class 15 shall consist of:

The Allowed Secured Claim of Bank of America with respect to the real property known as 107 Gallatin Avenue, Buffalo, New York ("107 Gallatin Property").

8

2.01.16        Class 16 shall consist of:

               The Allowed Secured Claim of Wells Fargo with respect to the real property known

               as 216 Oxford Avenue, Buffalo, New York ("216 Oxford Property").

2.01.17        Class 17 shall consist of:

               The Allowed Secured Claim of Wells Fargo with respect to the real property known

               as 504 and 506 27th Street, Niagara Falls, New York ("504 & 506 27th Property").

2.01.18        Class 18 shall consist of:

               The Allowed Secured Claim of Bank of America with respect to the real property

               known as 134 78th Street, Niagara Falls, New York ("134 78th Property").

2.01.19        Class 19 shall consist of:

               The Allowed Secured Claim of Bank of America with respect to the real property

               known as 22-11 Pierce Avenue, Niagara Falls, New York ("22-11 Pierce Property").

2.01.20        Class 20 shall consist of:

               The Allowed Secured Claim of Bank of America with respect to the real property

               known as 5620 Stephenson Avenue, Niagara Falls, New York ("5620 Stephenson

               Property").

2.01.21        Class 21 shall consist of:

               The Allowed Secured Claim of Bank of America with respect to the real property

               known as 618 72nd Street, Niagara Falls, New York ("618 72nd Property").

2.01.22        Class 22 shall consist of:

               The Allowed Secured Claim of Bank of America with respect to the real property

               known as 1308 Cleveland Avenue, Niagara Falls, New York ("1308 Cleveland

               Property").

2.01.23        Class 23 shall consist of:

The real property tax claim of the Town of Huntington with respect to the real property known as 5 Harbor Hill Drive, Huntington, New York ("5 Harbor Hill Property").

2.01.24    Class 24 shall consist of:

The real property tax claim of the City of Niagara with respect to the real property known as 1723 Ashland Avenue, Niagara Falls, New York ("1723 Ashland Property").

2.01.25    Class 25 shall consist of:

The real property tax claim of the City of Niagara with respect to the real property known as 134 78th Street, Niagara Falls, New York ("134 78th Property").

2.01.26    Class 26 shall consist of:

The real property tax claim of the City of Niagara with respect to the real property known as 2705 Willow Avenue, Niagara Falls, New York ("2705 Willow Property").

2.01.27    Class 27 shall consist of:

The real property tax claim of the City of Niagara with respect to the real property known as 2211 Pierce Avenue, Niagara Falls, New York ("2211 Pierce Property"). 20 Ontario Avenue, Niagara Falls, New York ("1820 Ontario Property").

2.01.28    Class 28 shall consist of:

All General Unsecured Claims which are impaired and consists of Allowed Unsecured Claims and claims arising from the rejection of executory contracts and unexpired leases and the deficiency portion of the secured claims.

## ARTICLE III

### IDENTIFICATION OF CLASSES OF CLAIMANTS
### IMPAIRED OR UNIMPAIRED UNDER THE PLAN

3.01.    Allowed Secured Claim of Chase (Class 1), Allowed Secured Claim of Bank of America (Class 2), Allowed Secured Claim of Bank of America (Class 3), Allowed Secured Claim of HSBC (Class 4), Allowed Secured Claim of Bank of America (Class 5), Allowed Secured Claim of Bank of America (Class 6), Allowed Secured Claim of Wells Fargo (Class 7), Allowed Secured Claim of HSBC (Class 8), Allowed Secured Claim of Bank of America (Class 9), Allowed Secured Claim of Bank of America (Class 10), Allowed Secured Claim of HSBC (Class 11), Allowed Secured Claim of HSBC (Class 12), Allowed Secured Claim of HSBC (Class 13), Allowed Secured Claim of HSBC (Class 14), Allowed Secured Claim of Bank of America (Class 15), Allowed Secured Claim of Wells Fargo (Class 16), Allowed Secured Claim of Wells Fargo (Class 17), Allowed Secured Claim of Bank of America (Class 18), Allowed Secured Claim of Bank of America (Class 19), Allowed Secured Claim of Bank of America (Class 20), Allowed Secured Claim of Bank of America (Class 21), Allowed Secured Claim of Bank of America (Class 22), Allowed Secured Property Tax Claim of the Town of Huntington (Class 23), Allowed Secured Property Tax Claim of the City of Niagara (Class 24), Allowed Secured Property Tax Claim of the City of Niagara (Class 25), Allowed Secured Property Tax Claim of the City of Niagara (Class 26), Allowed Secured Property Tax Claim of the City of Niagara (Class 27), and Allowed General Unsecured Claims (Class 28) are impaired by the Plan and are entitled to vote to accept or reject the Plan.

11

3.02.    In the event of a controversy as to whether any Claimant or Class of Claimants are impaired under the Plan, the Court shall, after notice and a hearing, determine such controversy.

3.03.    The Debtor shall provide all Claimants entitled to vote with a form of ballot approved by the Court to be used in casting a vote on the Plan. The ballot shall designate the Class in which the Debtor believes a particular Claim belongs

## ARTICLE IV

## PROVISIONS FOR TREATMENT
## OF CLAIMS UNIMPAIRED OR IMPAIRED UNDER THE PLAN

4.01.    Allowed Secured Claim of Chase (Class 1)

The Allowed Secured Claim of Chase with respect to the 5 Harbor Hill Property. Chase holds a first mortgage and is owed the sum of approximately $65,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by paying the arrears in sixty (60) equal monthly payments on the Effective Date and shall make the regular payment due under the note commencing on June 1, 2012. Chase shall maintain its mortgage lien on the 5 Harbor Hill Property.

4.02.    Allowed Secured Claim of Bank of America (Class 2)

The Allowed Secured Claim of Bank of America with respect to the 5 Harbor Hill Property. Bank of America holds a second mortgage and is owed the sum of approximately $126,659.75, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by paying the arrears in sixty (60) monthly payments commencing on the Effective Date and will pay the regular amount due under the note commencing on June 1, 2012. Bank of America shall maintain its mortgage lien on the 5 Harbor Hill Property.

4.03        Allowed Secured Claim of Bank of America (Class 3)

Class 3 consists of the Allowed Secured Claim of Bank of America with respect to the 29 Durham Property. Bank of America holds a first mortgage and is owed the sum of approximately $51,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $29,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 29 Durham Property shall be classified as a general unsecured claim. Bank of America shall maintain its mortgage lien on the 29 Durham Property in the sum of $29,000.00 and payment shall commence on the Effective Date of the Plan.

4.04        Allowed Secured Claim of HSBC (Class 4)

Class 4 consists of the Allowed Secured Claim of HSBC with respect to the 4 Oregon Property. HSBC holds a first mortgage and is owed the sum of approximately $52,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $29,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 4 Oregon Property shall be classified as a general unsecured claim. HSBC shall maintain its mortgage lien on the 4 Oregon Property in the sum of $29,000.00 and payment shall commence on the Effective Date of the Plan.

4.05        Allowed Secured Claim of Bank of America (Class 5)

Class 5 consists of the Allowed Secured Claim of Bank of America with respect to the 46 Gallatin Property. Bank of America holds a first mortgage and is owed the sum of approximately $52,000.00, which includes both pre-petition and post petition

arrears. The Debtor believes that the 56 Gallatin Property has a value of $31,000.00 and the Debtor shall satisfy the debt by restructuring it into a mortgage of $31,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 56 Gallatin Property shall be classified as a general unsecured claim. Bank of America shall maintain its mortgage lien on the 56 Gallatin Property in the sum of $31,000.00 and payment shall commence on the Effective Date of the Plan.

4.06        Allowed Secured Claim of Bank of America (Class 6)

Class 6 consists of the Allowed Secured Claim of Bank of America with respect to the 56 Gallatin Property. Bank of America holds a first mortgage and is owed the sum of approximately $52,000.00, which includes both pre-petition and post petition arrears. The Debtor believes that the 56 Gallatin Property has a value of $31,000.00 and the Debtor shall satisfy the debt by restructuring it into a mortgage of $31,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 56 Gallatin Property shall be classified as a general unsecured claim. Bank of America shall maintain its mortgage lien on the 56 Gallatin Property in the sum of $31,000.00 and payment shall commence on the Effective Date of the Plan.

4.07        Allowed Secured Claim of Wells Fargo (Class 7)

Class 7 consists of the Allowed Secured Claim of Wells Fargo with respect to the 51 Beatrice Property. Wells Fargo holds a first mortgage and is owed the sum of approximately $51,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $29,000.00 with interest at five (5%) percent per annum with an amortization for

14

fifteen (15) years. The amount of the debt that exceeds the value of the 51 Beatrice Property shall be classified as a general unsecured claim.    Wells Fargo shall maintain its mortgage lien on the 51 Beatrice Property in the sum of $29,000.00 and payment shall commence on the Effective Date of the Plan.

4.08         Allowed Secured Claim of HSBC (Class 8)

Class 8 consists of the Allowed Secured Claim of HSBC with respect to the 500 Normal Property.    HSBC holds a first mortgage and is owed the sum of approximately $53,000.00, which includes both pre-petition and post petition arrears.    The Debtor believes that the 500 Normal Property has a value of $33,000.00 and the Debtor shall satisfy the debt by restructuring it into a mortgage of $33,000.00 with interest at five (5%) percent per annum with an amortization of fifteen (15) years. The amount of the debt that exceeds the value of the 500 Normal Property shall be classified as a general unsecured claim.   HSBC shall maintain its mortgage lien on the 500 Normal Property in the sum of $33,000.00 and payment shall commence on the Effective Date of the Plan.

4.09         Allowed Secured Claim of Bank of America (Class 9)

Class 9 consists of the Allowed Secured Claim of Bank of America with respect to the 157 Cable Property.  Bank of America holds a first mortgage and is owed the sum of approximately $51,000.00, which includes both pre-petition and post petition arrears.  The Debtor shall satisfy the debt by restructuring it into a mortgage of $31,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 157 Cable Property shall be classified as a general unsecured claim.    Bank of America shall

15

maintain its mortgage lien on the 157 Cable Property in the sum of $31,000.00 and payment shall commence on the Effective Date of the Plan.

4.10          Allowed Secured Claim of Bank of America(Class 10)

Class 10 consists of the Allowed Secured Claim of Bank of America with respect to the 14 Gallatin Property. Bank of America holds a first mortgage and is owed the sum of approximately $51,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $33,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 14 Gallatin Property shall be classified as a general unsecured claim. Bank of America shall maintain its mortgage lien on the 14 Gallatin Property in the sum of $33,000.00 and payment shall commence on the Effective Date of the Plan.

4.11          Allowed Secured Claim of HSBC (Class 11)

Class 11 consists of the Allowed Secured Claim of HSBC with respect to the 26 York Property. HSBC holds a first mortgage and is owed the sum of approximately $54,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $33,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 26 York Property shall be classified as a general unsecured claim. HSBC shall maintain its mortgage lien on the 26 York Property in the sum of $33,000.00 and payment shall commence on the Effective Date of the Plan.

4.12        Allowed Secured Claim of HSBC (Class 12)

Class 12 consists of the Allowed Secured Claim of HSBC with respect to the 42 Edison Property. HSBC holds a first mortgage and is owed the sum of approximately $63,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $33,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 42 Edison Property shall be classified as a general unsecured claim. HSBC shall maintain its mortgage lien on the 42 Edison Property in the sum of $33,000.00 and payment shall commence on the Effective Date of the Plan.

4.13        Allowed Secured Claim of HSBC (Class 13)

Class 12 consists of the Allowed Secured Claim of HSBC with respect to the 48 Congress Property. HSBC holds a first mortgage and is owed the sum of approximately $53,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $28,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 48 Congress Property shall be classified as a general unsecured claim. HSBC shall maintain its mortgage lien on the 48 Congress Property in the sum of $28,000.00 and payment shall commence on the Effective Date of the Plan.

4.14        Allowed Secured Claim of HSBC (Class 14)

Class 14 consists of the Allowed Secured Claim of HSBC with respect to the 84 Gallatin Property. HSBC holds a first mortgage and is owed the sum of approximately $56,000.00, which includes both pre-petition and post petition

17

arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage for $34,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 84 Gallatin Property shall be classified as a general unsecured claim. HSBC shall maintain its mortgage lien on the 84 Gallatin Property in the sum of $34,000.00 and payment shall commence on the Effective Date of the Plan.

4.15        Allowed Secured Claim of Bank of America (Class 15)

Class 15 consists of the Allowed Secured Claim of Bank of America with respect to the 107 Gallatin Property. Bank of America holds a first mortgage and is owed the sum of approximately $49,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $35,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 107 Gallatin Property shall be classified as a general unsecured claim. Bank of America shall maintain its mortgage lien on the 107 Gallatin Property in the sum of $35,000.00 and payment shall commence on the Effective Date of the Plan.

4.16        Allowed Secured Claim of Wells Fargo (Class 16)

Class 16 consists of the Allowed Secured Claim of Wells Fargo with respect to the 216 Oxford Property. Wells Fargo holds a first mortgage and is owed the sum of approximately $54,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $26,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 216 Oxford Property shall be classified as a general unsecured claim. Wells Fargo shall

18

maintain its mortgage lien on the 216 Oxford Property in the sum of $26,000.00 and payment shall commence on the Effective Date of the Plan.

4.17        Allowed Secured Claim of Wells Fargo (Class 17)

Class 17 consists of the Allowed Secured Claim of Wells Fargo with respect to the 504 and 506 27th Property. Wells Fargo holds a first mortgage and is owed the sum of approximately $55,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $31,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 504 & 506 27th Property shall be classified as a general unsecured claim. Wells Fargo shall maintain its mortgage lien on the 504 & 506 27th Property in the sum of $31,000.00 and payment shall commence on the Effective Date of the Plan.

4.18        Allowed Secured Claim of Bank of America (Class 18)

Class 18 consists of the Allowed Secured Claim of Bank of America with respect to the 134 78th Property. Bank of America holds a first mortgage and is owed the sum of approximately $54,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $28,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 134 78th Property shall be classified as a general unsecured claim. Bank of America shall maintain its mortgage lien on the 134 78th Property in the sum of $28,000.00 and payment shall commence on the Effective Date of the Plan.

4.19        Allowed Secured Claim of Bank of America (Class 19)

Class 19 consists of the Allowed Secured Claim of Bank of America with respect to the 22-11 Pierce Property. Bank of America holds a first mortgage and is owed the sum of approximately $52,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $25,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 22-11 Pierce Property shall be classified as a general unsecured claim. Bank of America shall maintain its mortgage lien on the 22-11 Pierce Property in the sum of $25,000.00 and payment shall commence on the Effective Date of the Plan.

4.20        Allowed Secured Claim of Bank of America (Class 20)

Class 20 consists of the Allowed Secured Claim of Bank of America with respect to the 5620 Stephenson Property. Bank of America holds a first mortgage and is owed the sum of approximately $42,010.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $26,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 5620 Stephenson Property shall be classified as a general unsecured claim. Bank of America shall maintain its mortgage lien on the 5620 Stephenson Property in the sum of $26,000.00 and payment shall commence on the Effective Date of the Plan.

4.21        Allowed Secured Claim of Bank of America (Class 21)

Class 21 consists of the Allowed Secured Claim of Bank of America with respect to the 618 72nd Property. Bank of America holds a first mortgage and is owed the sum of approximately $51,000.00, which includes both pre-petition and post petition

arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $33,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 618 72nd Property shall be classified as a general unsecured claim. Bank of America shall maintain its mortgage lien on the 618 72nd Property in the sum of $33,000.00 and payment shall commence on the Effective Date of the Plan.

4.22        Allowed Secured Claim of Bank of America (Class 22)

Class 22 consists of the Allowed Secured Claim of Bank of America with respect to the 1308 Cleveland Property. Bank of America holds a first mortgage and is owed the sum of approximately $47,000.00, which includes both pre-petition and post petition arrears. The Debtor shall satisfy the debt by restructuring it into a mortgage of $23,000.00 with interest at five (5%) percent per annum with an amortization for fifteen (15) years. The amount of the debt that exceeds the value of the 1308 Cleveland Property shall be classified as a general unsecured claim. Bank of America shall maintain its mortgage lien on the 1308 Cleveland Property in the sum of $23,000.00 and payment shall commence on the Effective Date of the Plan.

4.23        Allowed Secured Tax Claim of the Town of Huntington (Class 23)

Class 23 consists of the real property tax claim of the Town of Huntington with respect to the 5 Harbor Hill Property. The amount due and owing to the Town of Huntington is the approximate sum of $12,000.00, which includes both pre-petition and post petition taxes. The Debtor shall pay $200.00 plus statutory interest per month commencing on the Effective Date for sixty (60) months to fully satisfy the taxes owed. The Town of Huntington shall retain its tax lien on the 5 Harbor Hill Property.

4.24    Allowed Secured Tax Claim of the City of Niagara (Class 24)

Class 24 consists of the real property tax claim of the City of Niagara with respect to the 1723 Ashland Property. The amount due and` owing to City of Niagara is the approximate sum of $600.00, which includes both pre-petition and post petition taxes. The Debtor shall pay $10.00 plus statutory interest per month commencing on the Effective Date for sixty (60) months to fully satisfy the taxes owed. The City of Niagara shall retain its tax lien on the 1723 Ashland Property.

4.25    Allowed Secured Tax Claim of the City of Niagara (Class 25)

Class 29 consists of the real property tax claim of the City of Niagara with respect to the 134 78th Property. The amount due and owing to City of Niagara is the sum of $9,246.86, which includes both pre-petition and post petition taxes. The Debtor shall pay $154.10 plus statutory interest per month commencing on the Effective Date for sixty (60) months to fully satisfy the taxes owed. The City of Niagara shall maintain its tax lien on the 134 78th Property.

4.26    Allowed Secured Tax Claim of the City of Niagara (Class 26)

Class 26 consists of the real property tax claim of the City of Niagara with respect to the 2705 Willow Property. The amount due and owing to City of Niagara is the sum of $6,671.04, which includes both pre-petition and post petition taxes. The Debtor shall pay $111.18 plus statutory interest per month commencing on the Effective Date for sixty (60) months to fully satisfy the taxes owed. The City of Niagara shall maintain its property tax lien on the 2705 Willow Property.

4.27    Allowed Secured Tax Claim of the City of Niagara (Class 27)

Class 27 consists of the real property tax claim of the City of Niagara with respect to the 2211 Pierce Property. The amount due and owing to City of Niagara is the sum

of $9,841.78, which includes both pre-petition and post petition taxes. The Debtor shall pay $164.02 plus statutory interest per month commencing on the Effective Date for sixty (60) months to fully satisfy the taxes owed. The City of Niagara shall maintain its property tax lien on the 2211 Pierce Property.

4.28        Allowed General Unsecured Claims (Class 28)

Class 28 consists of the General Unsecured Claims, which is impaired, consists of Allowed Unsecured Claims and claims arising from the rejection of executory contracts and unexpired leases and the deficiency portion of the secured claims. There are thirty four (34) claims asserted in the aggregate of $1,566,941.00, which shall be satisfied by the payment of $50,000.00 in the aggregate to the allowed claimants in sixty (60) monthly payments commencing on the Effective Date.

4.29        Priority Tax Claims

The Debtor shall satisfy the priority tax claims of the Internal Revenue Service and New York State Department of Taxation for unpaid income taxes in sixty (60) equal monthly installments, plus statutory interest, commencing on the Effective Date.

## ARTICLE V

### ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

5.01.        Each impaired Class of Claims shall be entitled to vote to accept or reject the Plan.

5.02.        A Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have accepted or rejected the Plan.

5.03.        In the event that any impaired Class with Claims against the Debtor's estate shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy

Code, the Debtor will request that the Court confirm the Plan in accordance with

Section 1129(b) of the Bankruptcy Code.

## ARTICLE VI

## PROVISIONS CONCERNING DISTRIBUTION

6.01.       Time of Distributions Under the Plan

Payments and distributions to be made by the Debtor on the Effective Date pursuant

to the Plan shall be made on such date, or as soon as practicable, except as otherwise

provided for in the Plan or as may be ordered by the Court.

6.02.       Payment Dates

Whenever any payment or distribution to be made under the Plan shall be due on a

day other than a Business Day, such payment or distribution shall instead be made,

without interest, on the next Business Day.

6.03.       Manner of Payments Under the Plan

Payments to be made by the Debtor pursuant to the Plan shall be made in cash, by

check drawn on a domestic bank or by wire transfer from a domestic bank.

6.04.       Fractional Cents

Any other provision of the Plan to the contrary notwithstanding, no payments of

fractions of cents will be made.  Whenever any payment of a fraction of a cent

would otherwise be called for, the actual payment shall reflect a rounding of such

fraction to the nearest whole cent (up or down).

6.05.       Unclaimed Distributions

Except as otherwise provided herein, in the event any Entity fails to claim any

distribution or cash a distribution check within six (6) months from the date such

payment is distributed, such Entity shall forfeit all rights thereto, and to any and all

24

future payments, and thereafter the Claim for which such cash was distributed shall be treated as a Disallowed Claim and the funds shall become the property of the Reorganized Kistela. In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Court or, if no proof of claim is filed, on the schedules filed by the Debtor, or to such other address as may be designated by a Claimant in accordance with Section 16.02 hereof.

6.06.        Disputed Payments or Distributions

In the event of any dispute between and among Claimants (including the Entity or Entities asserting the right to receive the disputed payment or distribution) as to the right of any Entity to receive or retain any payment or distribution to be made to such Entity under the Plan, the Debtor may, in lieu of making such payment or distribution to such Entity, make it instead into an interest bearing escrow account or to a disbursing agent, for payment or distribution as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves.

6.07.        Restrictions on Sale of Assets

Until all distributions shall have been made to holders of Allowed Claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27 and 28 as provided for under the Plan, the Reorganized Kistela undertakes and covenants that he shall not sell, assign or transfer assets (including cash) of the Reorganized Kistela in bulk, out of the ordinary course of business, unless upon such a transaction the cash and deferred consideration received or to be received shall exceed the then unpaid balance of any payments due and owing to the holders

of Allowed Claims with respect to a particular property and on further condition that such payments shall be prepaid upon the closing of title to any such transaction to the extent of the cash consideration; the deferred consideration, to the extent necessary, shall be made payable to a separate interest bearing account for the benefit of holders of Allowed Claims in Class 28.

## ARTICLE VII

## PROVISIONS CONCERNING DISCHARGE AND PROPERTY

7.01.    Discharge of All Claims

Except as otherwise provided in the Plan, the rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims or Interests of any nature whatsoever, including any interest accrued thereon from and after September 7, 2011, against the Debtor or the Debtor-In-Possession or any of their assets or properties; and except as otherwise provided herein, after all required payments are made to claimants in Classes 1 through 28 and under Section 1141(d)(5), all such Claims against the Debtor or Debtor-In-Possession shall be satisfied, discharged and released in full; and all Claimants shall be precluded from asserting against the Reorganized Kistela or his assets or properties, any other or further claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

7.02.    Vesting of Property in the Debtor.

Except as otherwise provided by the Plan, on the Effective Date, title to all assets dealt with by the Plan shall pass to the Reorganized Kistella free and clear of all liens, claims and interests in accordance with Section 1141 of the Bankruptcy Code.

## ARTICLE VIII

## RELEASES AND TERMINATION

8.01.     Releases.

On the Effective Date, in the event all required  distributions shall have been made, all Claims based upon guarantees of collection, payment or performance, indemnity bonds or obligations, performance bonds, contingent liabilities arising out of the assignment of leases or contract obligations, or other similar undertakings made or given by the Debtor prior to the Confirmation Date shall be discharged, released and of no further force and effect.

8.02.     Certain Terminations.

On the Effective Date, all instruments evidencing indebtedness of the Debtor discharged by the Plan shall be deemed canceled, unless this Plan provides for the retention of liens.

8.03.     Rights if Plan not Confirmed.

If Confirmation of the Plan does not occur as contemplated herein, the Plan shall be deemed null and void, and in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.

## ARTICLE IX

## REJECTION AND ASSUMPTION OF EXECUTORY CONTRACTS

9.01.     Except as otherwise provided herein, any pre-petition executory contract or unexpired lease of the Debtor not expressly rejected by the Debtor, or which is not the subject of a pending application to reject on the Confirmation Date, shall be

deemed assumed on the Effective Date. The Debtor does not intend to assume any executory contracts.

9.02.    Any Entity whose Claim arises from rejection of an executory contract or unexpired lease shall, to the extent such Claim becomes an Allowed Claim, have the rights of a Class 34Claimant with respect thereto.

9.03.    Any Entity who has a claim against the Debtor by virtue of the Debtor's rejection of its contract or lease may file a proof of claim with the Clerk of the Court and serve a copy of same upon the Debtor and Debtor's counsel, in accordance with the notice provisions of Section 15.04 hereof, within thirty (30) days following service upon such Entity of notice of entry of the Confirmation Order or order authorizing such rejection, whichever is later. If such Claim shall not be filed within the specified time, it shall be forever barred from assertion against the Debtor or its assets and property.

9.04.    Any claim filed in accordance with the provisions of Section 9.03 hereof shall be treated as a Disputed Class 28 Claim until the period of time has elapsed within which the Debtor may file an objection to such Claim.

### ARTICLE X

### MEANS FOR EXECUTION OF THE PLAN
### AND CONDITIONS TO CONFIRMATION

10.01.    The Plan is to be implemented in a manner consistent with Section 1123 of the Bankruptcy Code.

10.02    The monies needed to pay the holders of Allowed Claims shall be generated from the income earned by the Debtor from his business and from rent collected from the rental houses.

## ARTICLE XI

### PROCEDURES FOR RESOLVING DISPUTED CLAIMS

11.01.        Objections to Claims

Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of each of the Claims to which objections are made, no later than ninety (90) days subsequent to the Effective Date or within such other time period as may be fixed by the Court.

11.02.        Resolution of Disputed Claims

Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claims, in their sole discretion.

11.03.        Payments

Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs unless otherwise ordered by the Court. Such payments and distributions shall be made as soon as practicable after the date that the Court entered a Final Order allowing such Claim. Payments made in accordance with this Article shall not include the interest on the amount of such payment from the date on which the holder of the Allowed Claim would have been entitled to receive payment if its Claim had not been a Disputed Claim. Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a Disallowed Claim, pursuant to a Final Order or agreement between the Debtor and such Claimant. In the event a claim is disputed as of the Effective

Date, the Debtor shall reserve the full amount of the distribution to that Claimant as if the Claim was allowed in full.

## ARTICLE XII

## RETENTION OF JURISDICTION

12.01.       Retention of Jurisdiction

The Court shall retain jurisdiction of these proceedings following the Confirmation Date for the following purposes:

12.01.1      to hear and determine any objections to the allowance of Claims;

12.01.2      to determine any and all applications for compensation for Professional Persons and similar fees;

12.01.3      to determine any and all pending applications for the rejection or assumption of executory contracts or for the assignment of an assumed contract, as the case may be, of executory contracts to which the Debtor is a party or with respect to which they may be liable, and to hear and determine, and if need be, to liquidate, any and all Claims arising therefrom;

12.01.4      to determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court and pending on the Confirmation Date;

12.01.5      to modify the Plan pursuant to Section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

12.01.6      to hear and determine all controversies, suits and disputes, if any, including Avoidance Actions, as may arise in connection with the interpretation or enforcement or implementation of the Plan;

12.01.7    to hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court in the Chapter 11 Case entered on or before the Confirmation Date;

12.01.8    to liquidate damages in connection with any disputed, contingent or unliquidated Claims;

12.01.9    to adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

12.01.10    to adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 Case;

12.01.11    to recover all assets and properties of the Debtor wherever located, including the prosecution and adjudication of all causes of action available to the Debtor as of the Confirmation Date;

12.01.12    to determine all questions and disputes regarding recovery of and entitlement to the Debtor's assets and determine all Claims and disputes between the Debtor and any other Entity, whether or not subject to an action pending as of the Confirmation Date;

12.01.13    to enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary or appropriate;

12.01.14    to enter an order of consummation concluding and terminating the Chapter 11 Case; and

12.01.15      to make such orders as shall be necessary or appropriate to carry out the provisions of the Plan, including, but not limited to, orders interpreting, clarifying or enforcing the provisions thereof.

## ARTICLE XIII

## EVENT OF DEFAULT

13.01.      The occurrence of any of the following shall constitute a default by the Debtor under the Plan:

13.01.1      the failure of the Debtor to make any payment when due under the Plan, which failure shall have been uncured for a period of sixty (60) days after the Debtor's receipt of written notice thereof unless such payment has been extended in accordance with the provisions of the Plan; and

13.01.2      the failure of the Debtor to comply with any of the covenants contained in the Plan, except for default in payment as provided in paragraph 13.01.1 of this Article, which failure shall remain uncured for a period of sixty (60) days after the Debtor has received written notice of such failure.

13.01.3      Upon the occurrence of a default, any Claimant may declare all amounts due to it under the Plan to be immediately due and payable and may exercise any and all rights under applicable law.

## ARTICLE XIV

## GENERAL PROVISIONS

14.01.      Modification of the Plan

The Debtor reserves the right in accordance with Section 1127 of the Bankruptcy Code, to amend or modify the Plan before or after the Confirmation Date.

14.02.    Administrative Claims Bar Date.

Unless otherwise ordered by the Court, the Confirmation Order shall operate to set a

bar date for Administrative Claims, except for Claims by professionals, including

attorneys and accountants, which bar date shall be the first Business Day that is at

least twenty (20) days after the Confirmation Date (the "Administrative Claims Bar

Date"). The Notice of Confirmation to be delivered pursuant to Bankruptcy Rules

2002 and 3020(c) will set forth such date and constitute notice of the Administrative

Claims Bar Date. The Reorganized Kistela will have thirty (30) days after the

Administrative Claims Bar Date to review and object to such Administrative Claims,

unless extended by the Court.

14.03.    Ratification of Action Taken During Pendency of the Chapter 11 Case

The Confirmation Order shall ratify all transactions effected by the Debtor during

the period commencing on the Petition Date and ending on the Confirmation Date.

14.04.    Notices

All notices, requests, elections or demands in connection with the Plan, including

any change of address of any Claimant for the purposes of receiving distribution

under the Plan and forfeiting same pursuant to Section 7.05 hereof, shall be in

writing and shall be deemed to have been given when received or, if mailed, five

days after the date of mailing provided such writing shall have been sent by

registered or certified mail, postage prepaid, return receipt requested, and (a) if sent

to the Debtor, addressed to:

          Richard H. Kistela
          5 Harbor Hill Drive
          Lloyd Harbor, New York 11743

with copy to Debtor's counsel:

Weinberg, Gross & Pergament LLP
400 Garden City Plaza, Suite 403
Garden City, New York 11530
Attn: Marc A. Pergament, Esq.

All notices and requests to Claimants of any Class shall be sent to them at their last known address. The Debtor, and any Claimant of any Class, may designate in writing any other address for purposes of this Section 14.04, which designation shall be effective upon receipt.

14.05.    Headings

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

14.06.    Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York.

14.07.    Successors and Assigns

The rights and obligations of any Entity named or referred to in the Plan shall be binding upon and shall inure to the benefit of, the successors and assigns of such Entity.

14.08.    Reservation of Rights

Nothing contained herein shall prohibit the Debtor or a Claimant from prosecuting or defending any of his rights as may exist on his own behalf.

14.09.    Disbursing Agent

The Debtor is the disbursing agent under the Plan. All payments to claimants in Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23,

24, 25, 26, 27 and 28 shall be made by the Debtor from a separate disbursement account.

14.10     Exculpation. Following the Effective Date, neither the Debtor, the Reorganized Kistela and any of their agents, nor any professional persons employed by any of them, shall have or incur any liability or obligation to any Entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, solicitation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, release or other agreement or document created or entered into, or any other action taken or omitted to be taken, in connection with the Plan or the Chapter 11 Case; provided, however, that the provisions of this sentence shall have no effect on the liability of any Entity that would otherwise result from an action or omission to the extent that such action or omission is determined in a Final Order to have constituted gross negligence or willful misconduct and for obligations provided under the Plan.

14.11.     Discharge Injunction. The Confirmation Order shall provide that all Entities which have held, hold or may hold Claims that are discharged pursuant to the terms of the Plan shall be thereby permanently stayed, restrained and enjoined on and after all payments are made to claimants in Classes 1 through 28 from taking any of the following actions on account of such discharged Claims, other than actions brought to enforce any rights or obligations under the Plan: (i) commencing, conducting or continuing in any manner any action or proceeding of any kind (including any thereof in a judicial, arbitral, administrative or other forum) against the Reorganized Kistela, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the Debtor or the Reorganized

Kistela or any property of any such transferee or successor, (ii) enforcing, levying, attaching (including pre-judgment attachment), collecting or otherwise recovering, by any manner or means, any judgment, award, decree or order against any of the Reorganized Kistela, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the Debtor or the Reorganized Kistela, or any property of any such transferee or successor, (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Lien against any of the Reorganized Kistela, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the Debtor or the Reorganized Kistela, (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any of the Reorganized Kistela, or any direct or indirect transferee of any property of, or successor in interest to, any of the Debtor or the Reorganized Kistela or (v) acting or proceeding in any manner that does not conform to or comply with the provisions of the Plan and the Confirmation Order.

Dated: Lloyd Harbor, New York
      April 26, 2012

_____
Richard H. Kistela

Dated: Garden City, New York
      April 26, 2012

Weinberg, Gross & Pergament LLP
Attorneys for Debtor and Debtor-in-Possession

By: _____
Marc A. Pergament
400 Garden City Plaza, Suite 403
Garden City, New York  11530
(516) 877-2424